FILED
United States Court of Appeals
Tenth Circuit

November 24, 2010

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA/
INTERNAL REVENUE SERVICE,

        Petitioner - Appellee,

v.

PAUL LANOIE, JR.,

        Respondent - Appellant.

No. 10-2125
(D.C. No. 08-MC-00030-MV)
(D. New Mexico)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Paul Lanoie Jr. proceeding *pro se*, appeals an order of the district court ordering him to provide the Internal Revenue Service ("IRS") with information

_____

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

sought in a summons issued by the IRS, as well as a separate judgment enforcing the summons against him. We affirm.

## BACKGROUND

As part of an ongoing investigation relating to the collection of potential outstanding tax liabilities of Mr. Lanoie for the 1997, 1998 and 1999 tax years, on June 25, 2008, IRS Revenue Officer Dean Chavez issued a summons to Mr. Lanoie, along with a Form 433-A Collection Information Statement. The summons directed Mr. Lanoie to appear before Mr. Chavez on July 16, 2008, to provide testimony and produce certain categories of documents pertaining to his assets and liabilities.

On July 15, 2008, Mr. Chavez received a letter from Mr. Lanoie stating that he could not attend the scheduled July 16 meeting and requesting that he be given a choice of at least three more dates for the meeting. In his letter, Mr. Lanoie noted case law providing that only a court can enforce an IRS summons, and asked, "If that is the case, why should I appear before you and give you documents and answer any of your questions?" Letter at 2, R. Vol. 1 at 36.[1] He

---

[1] Mr. Lanoie cited a Second Circuit opinion, Schulz v. IRS, 395 F.3d 463, 465 (2d Cir.), clarified on rehearing, 413 F.3d 297 (2d. Cir. 2005), for the proposition that "absent an effort to seek enforcement through a federal court, IRS summonses apply no force to taxpayers, and no consequence whatever can befall a taxpayer who refuses, ignores, or otherwise does not comply with an IRS summons until that summons is backed by a federal court order."

further stated, "[i]t seems to me that every relevant question or request for documents that you can ask from me can be used in a criminal tax case against me," and that if he was "wrong about this and you still want to meet and put all the above into action, let me know and we can meet." Id.

Mr. Chavez left messages on Mr. Lanoie's home telephone, rescheduling the meeting for July 28, 29 or 30, 2008, but Mr. Lanoie failed to appear on any of those dates. Mr. Lanoie claimed that he never received the messages left by Mr. Chavez.

On September 2, 2008, the United States Attorney for the District of New Mexico, after consulting with Mr. Chavez, sent Mr. Lanoie a letter identifying the categories of information sought in the summons and requesting that Mr. Lanoie meet with Mr. Chavez to provide the requested information on September 11, 2008. In his response letter dated September 9, 2008, Mr. Lanoie complained that Mr. Chavez had not yet answered the questions Mr. Lanoie asked in his previous letter, stated that he could not attend the September 11 meeting, and requested three more dates for a meeting.

On September 16, 2008, the government filed a petition in federal district court to enforce the summons. The petition was supported by a declaration from Mr. Chavez and a copy of the summons. The petition alleged that the IRS sought the summoned information for the purpose of determining Mr. Lanoie's ability to

pay and that the IRS had not referred the issue of Mr. Lanoie's tax liabilities to the Department of Justice for criminal prosecution.

On October 6, 2008, Mr. Lanoie filed an objection to the petition, stating that he had not been uncooperative in response to the summons, but was "attempting to get [the IRS] to clarify [his] confusion and lack of knowledge regarding IRS rules and procedure." Resp't's Objection to Pet'r's Pet. to Enforce IRS Summons at 1, R. Vol. 1 at 29. Mr. Lanoie did not argue in his Objection that the materials sought by the summons were protected from disclosure by the Fifth Amendment. He did, however, include a copy of his previous letter to the IRS, which stated, "[i]t seems to me that every relevant question or request for documents that you can ask from me can be used in a criminal tax case against me." Id. at 36. He made no other reference to the Fifth Amendment's right to not incriminate himself.

On December 30, 2008, the district court issued an order directing Mr. Lanoie to appear before the court on January 22, 2009, to show cause why he should not comply with the IRS summons. Subsequently, on January 14, 2009, Mr. Lanoie finally met with Mr. Chavez, who asked him the questions that had been posed to him in the Collection Information Statement, which had been sent to Mr. Lanoie as part of that first summons issued on June 25, 2008. While Mr. Lanoie provided his name, address and social security number, he invoked

the Fifth Amendment in response to the questions on the form pertaining to employment and other financial information.

Mr. Chavez did not request that Mr. Lanoie provide any specific documents during the meeting because, without answers to the questions, he did not know which documents Mr. Lanoie possessed.

On January 22, 2009, Mr. Lanoie filed a motion to dismiss, claiming that he had complied with the summons during his meeting with Mr. Chavez on January 14, 2009. In support of his motion, Mr. Lanoie declared that during the meeting, he had answered Mr. Chavez's questions, invoking the Fifth Amendment response to some of them, and that Mr. Chavez had not asked for any documents.

Also on January 22, 2009, Mr. Lanoie appeared at the show-cause hearing before the district court and stated that, during his meeting with Mr. Chavez on January 14, 2009, he had "answered [Mr. Chavez's] questions invoking the Fifth Amendment right. I believe it is my privilege and my right, and it is an answer." Tr. of Proceedings at 6, R. Vol. 2 at 8. The district court reviewed the questions and told Mr. Lanoie that he had no valid Fifth Amendment right to refuse to answer the questions posed him by Mr. Chavez:

> Mr. Lanoie, quite frankly and quite simply, without answering these questions with regard to your assets, your income, your expenses, the IRS is not in a position to know what your liability is. And you do not have a valid Fifth Amendment right to refuse to answer these questions, because the Government, without this basic information, cannot even determine whether you have any liability.

So, you have not fulfilled your responsibilities, You have not done what you were requested by me to do under my Order to Show Cause. So, unless you answer the questions now, in a meeting that I will give you an opportunity right [now] to do . . ., you will be arrested.

Id. at 10-11. Mr. Lanoie declined to answer the questions and was arrested for being in contempt of court.

Mr. Lanoie was released from jail a few hours later. In its Order of Release, the court stated that, in accordance with its earlier ruling at the hearing, Mr. Lanoie had "not shown that he faces a real hazard of criminal liability if this information is provided and, therefore, has not properly asserted a Fifth Amendment privilege." Order of Release, R. Vol. 1 at 54.

Mr. Lanoie then filed a notice of appeal to this court. We dismissed that appeal for lack of jurisdiction because no enforcement order had been entered and prejudgment civil contempt findings are not reviewable on interlocutory appeal. United States v. Lanoie, No. 09-2030 (10th Cir., Feb. 4, 2010) (unpublished).

After our dismissal of that first appeal, the district court entered an order and separate judgment in favor of the United States, enforcing the summons. The court observed that it had informed Mr. Lanoie at the show-cause hearing that "he had no valid Fifth Amendment right not to answer the questions." Order Enforcing Summons at 1, R. Vol. 1 at 87. It further noted that it had "inadvertently failed to enter a final order enforcing the summons before finding Lanoie in contempt." Id. at 88. Mr. Lanoie appeals the order and judgment

-6-

enforcing the summons, arguing that the district court erred in concluding that he had not complied with the IRS summons; that the district court used the wrong standard to determine whether Mr. Lanoie had complied with the IRS summons; and that the district court erred in enforcing the summons.

**DISCUSSION**

We review a district court's enforcement order for clear error. United States v. Coopers & Lybrand, 550 F.2d 615, 620 (10th Cir. 1977).

Pursuant to §§ 7801 and 7802 of the Internal Revenue Code, 26 U.S.C. §§ 7801, 7802, Congress has conferred upon the Secretary of the Treasury and the Commissioner of Internal Revenue the responsibility of administering and enforcing the Internal Revenue Code. See United States v. Ford, 514 F.3d 1047, 1053 (10th Cir. 2008); Lonsdale v. United States, 919 F.2d 1440, 1447 (10th Cir. 1990). Accordingly, under 26 U.S.C. § 6201, the Secretary is "authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by" the Code. Section 7602 grants the IRS "expansive information-gathering authority" in order to ensure effective tax investigations. United States v. Arthur Young & Co., 465 U.S. 805, 816 (1984); Codner v. United States, 17 F.3d 1331, 1332 (10th Cir. 1994). That section authorizes the Secretary to examine records, to summon taxpayers, and to take testimony for the

-7-

purposes of "ascertaining the correctness of any return, making a return where none has been made, determining the liability of any person for any internal revenue tax or liability at law or in equity . . . or collecting any such liability." United States v. Euge, 444 U.S. 707, 710-11 (1980) (quoting 26 U.S.C. § 7602).

When an individual fails to obey an IRS summons, the government may petition a federal district court to enforce the summons. 26 U.S.C. § 7402(b); United States v. Balanced Fin. Mgmt., Inc., 769 F.2d 1440, 1446-47 (10th Cir. 1985). To obtain enforcement of a summons, the government "must show that the investigation will be conducted pursuant to a legitimate purpose, that the inquiry may be relevant to the purpose, that the information sought is not already within the Commissioner's possession, and that the administrative steps required by the Code have been followed." United States v. Powell, 379 U.S. 48, 57-58 (1964); Ford, 514 F.3d at 1049; Application to Enforce Admin. Subpoenas Duces Tecum v. Knowles, 87 F.3d 413, 415 (10th Cir. 1996); United States v. Silvestain, 668 F.2d 1161, 1163 (10th Cir. 1982). Furthermore, a summons may not be issued, nor an enforcement proceeding commenced, if a "Justice Department referral is in effect with respect to such person." 26 U.S.C. § 7602(d)(1).

"The burden [on the government to show compliance with Powell] is a slight one because the statute must be read broadly in order to ensure that the enforcement powers of the IRS are not unduly restricted." Balanced Fin. Mgmt., Inc., 769 F.2d at 1443. It may be satisfied "by affidavit of the agent who issued

the summons and who is seeking enforcement." Id. (further quotation omitted).

If the government makes the minimal showing necessary for enforcement, the

party opposing enforcement bears the "heavy" burden of establishing a valid

defense. United States v. LaSalle Nat. Bank, 437 U.S. 298, 316 (1978); Balanced

Fin. Mgmt., Inc., 769 F.2d at 1444. If the taxpayer fails to meet that heavy

burden, the summons must be enforced. LaSalle, 437 U.S. at 316-18; Powell, 379

U.S. at 58.

### I. Compliance with Summons:

Mr. Lanoie does not dispute that the government established the requisite

*prima facie* elements for enforcement of the summons. That conclusion is

indisputable. Accordingly, the next question is whether Mr. Lanoie has met the

heavy burden of proving that enforcement of the summons would "constitute an

abuse of the court's process, or that in issuing the summons the IRS lack[ed]

institutional good faith." Anaya v. United States, 815 F.2d 1373, 1377 (10th Cir.

1987) (citation and internal quotation marks omitted). Rather than challenging

the government's establishment of a *prima facie* case, either before the district

court or in his opening brief on appeal, Mr. Lanoie invoked the Fifth Amendment

as a defense to answering financial questions.

As the government concedes, a taxpayer may challenge a summons under

the Fifth Amendment's provision that no person "shall be compelled in any

criminal case to be a witness against himself." U.S. Constitution, Amend. V. The protection of the Fifth Amendment must, however, be invoked in the proper manner. "[I]n this circuit . . . specificity is required in order properly to invoke Fifth Amendment protection." United States v. Clark, 847 F.2d 1467, 1474 (10th Cir. 1988). Thus, "[a]ppellants' generalized fear of criminal prosecution for a violation of the tax laws is an insufficient basis for asserting a blanket claim of the Fifth Amendment privilege in refusing to produce any of the documents requested by the summons[]." United States v. Schmidt, 816 F.2d 1477, 1481-82 (10th Cir. 1987) (footnote omitted). As we further explained in Schmidt:

> [I]n order to invoke the constitutional protection under the Fifth Amendment that bars compelled self-incrimination, appellants must demonstrate that they have a reasonable cause to apprehend danger upon giving a responsive answer that would support a conviction, or would furnish a link in the chain of evidence needed to prosecute them for a violation of the criminal statutes. To satisfy this requirement, appellants must factually establish that the risks of incrimination resulting from their compelled testimonial communications to be substantial and real, not merely trifling or imaginary, hazards of incrimination. Appellants are not exonerated from answering merely because they declare that in so doing they would incriminate themselves–their say-so does not of itself establish the hazard of incrimination. Appellants have offered no evidence or sworn statements to justify their claim that injurious disclosure could result from a responsive production of the summoned documents.
>
> . . . .
>
> In order to validly raise the Fifth Amendment privilege, appellants must comply with the instructions of the summons[]. At the appropriate time, appellants may interpose their claim of Fifth Amendment privilege pertaining to specific documents and in response to individual questions upon their reasonable belief that a

-10-

compulsory response by them to these testimonial matters will pose a substantial and real hazard of subjecting them to criminal liability.

Id. (citations, quotations and internal alterations omitted); see also Clark, 847 F.2d at 1474-75.

Under this standard, Mr. Lanoie clearly failed to properly invoke his Fifth Amendment privilege. Officer Chavez asked him to answer the questions contained on IRS Form 433-A Collection Information Statement. Other than personal data, the questions pertained to employment and other financial information. In response to each question, Mr. Lanoie invoked the Fifth Amendment privilege, stating generally such things as "it seems to me that every relevant question or request for documents . . . can be used in a criminal tax case against me," Letter at 2, R. Vol. 1 at 36, and that he had a "right to not give testimony that could be used against him." Resp't's Mot. to Dismiss at 3, R. Vol. 1 at 49. Those general assertions do not satisfy Mr. Lanoie's obligation to show that he faced a real and substantial risk of criminal liability; rather, they amount to the kind of generalized claim of privilege we have found to be insufficient.

Furthermore, as the government points out, the summons here was issued as part of a civil investigation, for the purpose of determining Mr. Lanoie's tax liability. When the IRS is conducting a "civil investigation, the mere fact that evidence might be used against [a taxpayer] in a later prosecution will not support a claim of self-incrimination." United States v. Roundtree, 420 F.2d 845, 852

-11-

(5th Cir. 1985). Accordingly, the district court correctly rejected Mr. Lanoie's assertion of a Fifth Amendment privilege as a defense to answering the questions posed in the summons.

**II. Applicable Standard to Determine Compliance with Summons:**

Mr. Lanoie next argues that the district court at the hearing "used the incorrect standard to determine if Lanoie complied with the IRS administrative summons. The correct standard is whether Lanoie had a real and appreciable fear of criminal prosecution." Appellant's Br. at 10. We have already determined that the district correctly determined that Mr. Lanoie failed to comply with the summons, so this argument is moot, or, at least, beside the point. The government focuses on a sentence in the conclusion of Mr. Lanoie's brief, asserting that Mr. Lanoie's argument is that "[t]he record clearly supports the fact that Lanoie had a real and appreciable fear of criminal prosecution because the IRS alleges he fails to file tax returns, a crime pursuant to 26 U.S.C. Section 7203, or even Section 7201." Id. at 15.

As the government further points out, Mr. Lanoie never made this argument below, and he therefore may not bring it up for the first time on appeal. See McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 999 (10th Cir. 2002) ("[W]e will not consider arguments raised for the first time on appeal."). Even were we to address it, Mr. Lanoie fails to point us to where in the record the IRS claimed

he had failed to file tax returns. Indeed, the whole point of the summons was to provide sufficient information so that the IRS could determine if, in fact, Mr. Lanoie had tax liabilities. The IRS did not yet know whether Mr. Lanoie actually had such liabilities. This argument is, accordingly, meritless.

### III. Enforcement of Summons:

Finally, Mr. Lanoie argues that the district court "should not have ordered enforcement of the summons, rather, the District Court should have conducted an Argomaniz *in camera* hearing to determine if Lanoie's Fifth Amendment claim had a basis in fact." Appellant's Opening Br. at 15 (citing United States v. Argomaniz, 925 F.2d 1349 (11th Cir. 1991)). We have set forth, above, the necessary procedure for a court to evaluate a claim of Fifth Amendment privilege in this circuit. We specify no *requirement* for an *in camera* hearing. Neither does Argomaniz itself mandate such a hearing; it simply states that, in the circumstances of that case, the district court would be best able to evaluate the records and documents provided by the taxpayer to determine if they are incriminatory by using an *in camera* hearing. This argument is also meritless.

## CONCLUSION

For the foregoing reasons, we AFFIRM the order and judgment of the district court.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge